UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JOHNATHAN E. SCARBROUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 2:16-CV-281-TAV-MCLC |
| | ) | |
| STATE OF TENNESSEE, | ) | |
| BREANNE SPILLMAN, | ) | |
| MASON BYRD, JOHN DAVIS, | ) | |
| INMATE BROOKS, CHRIS HARVILL, | ) | |
| and RN-ALEX, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the Court on a pro se prisoner's complaint under 42 U.S.C. § 1983 [Doc. 1] and a motion for leave to proceed *in forma pauperis* [Doc. 3]. It appears from the motion for leave to proceed *in forma pauperis* that Plaintiff lacks sufficient financial resources to pay the $350.00 filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 3] will be **GRANTED**. For the reasons set forth below, however, no process shall issue and this action will be **DISMISSED** for failure to state a claim upon which relief may be granted under § 1983.

**I.  Screening Standard**

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B), 1915(A); *Benson v. O'Brian*, 179 F.3d 1014, 1015–16 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## II. Allegations of the Complaint

In his complaint, Plaintiff alleges that (1) Defendant Spillman failed to treat a medical issue resulted in permanent scarring in Plaintiff's genital area; (2) filthy jail conditions led to Plaintiff being infected with methicillin-resistant staphylococcus aureus ("MRSA"); (3) Grainger County has a "major history" of incompetency and lack of compliance due to staff leaving and the jail is in the "the turmoil of neglect and poor systematic procedure;" and (4) these conditions have resulted in possible permanent damage to Plaintiff's genital area [Doc. 1 p. 4].

In support of these allegations, Plaintiff states that on Wednesday, July 6, 2016, he noticed a pimple on the left side of his penis and that he "mashed it and washed the area real good. Not thinking about the showers being nasty and not cleaned properly. The drain clog[]s up causing about [three] inches of water in [the] shower . . . . Not getting our towels washed daily, all the [dirtiness] from all the other inmates is now on your towel" [Doc. 1-1 p. 2]. Plaintiff then asserts that at lunchtime on July 8, 2016,[1] he told Defendant Sgt. Byrd he needed to see the nurse and that at four p.m., he told Defendant Sgt. Byrd the specifics of "his

---

[1] The Court takes judicial notice that July 8, 2016, was a Friday.

emergencies" [Doc. 1 p. 5; Doc. 1-1 p. 2].  Plaintiff states that at six or six-thirty p.m., Defendant Sgt. Byrd advised him that Defendant Nurse Spillman had stated she could not see males with private area medical issues and had therefore put him on the doctor list to be seen Monday [Doc. 1 p. 5; Doc. 1-1 p. 3].

Plaintiff states that he then asked Defendant Sgt. Byrd where the male nurse was, but Defendant Sgt. Byrd did not know [Doc. 1 p. 5; Doc. 1-1 p. 3].  After shift change occurred at seven p.m., Plaintiff states that he requested a visit with Defendant Sgt. John Davis and that, after he showed Defendant Sgt. Davis his problem, Defendant Sgt. John Davis contacted the jail administrator, who advised Defendant Sgt. John Davis to call Defendant Nurse Alex [Doc. 1 pp. 5–6; Doc. 1-1 pp. 3–4].  Plaintiff states that Defendant Nurse Alex came to the jail from the hospital where his dad was staying due to a heart attack and gave Plaintiff two shots in the hips and started him on antibiotics [Doc. 1 p. 6; Doc. 1-1 p. 4].  Also, on Monday, the jail doctor prescribed Plaintiff ten days of antibiotics and pulled out some of the infection [Doc. 1 p. 6; Doc. 1-1 p. 4].

Plaintiff then states that the jail "is so nasty from not using the proper cleaner[]s that the shower[]s got mold in them and the drains backed up after the third week since the [Sheriff] took all our things and only gave us [one] pair of uniforms and no undergarments the infection started to spread.  I told Nurse Alex and he put me back on some strong antibiotics and it healed.  Now I have a nasty scar" [Doc. 1 p. 6].  In support of these assertions, Plaintiff states that he did not receive treatment that complied with the jail's inmate handbook policy regarding MRSA, which required medical segregation, antibiotics, daily showering, changing of clothes, and keeping the infected site covered with a bandage [Doc. 1-1 p. 4].  Plaintiff also asserts that a jail shakedown occurred in which the Sheriff took away inmates' personal property, including items purchased

3

from commissary, and all inmate clothing except one set of "strips" [*Id.* at 4–5]. Plaintiff states that he and two other inmates were left in a two-man cell for four to five hours at night with individual blankets until their clothes "came back" [*Id.* at 4–5, 7]. Plaintiff further states that "because of not hav[ing] proper treatment [he] started getting real sore around [his groin] area [and] the doctor pulled some of the infection out" and that he felt better for about five days, but then noticed he was getting another bump [*Id.* at 5]. Plaintiff states that he told Defendant Alex about this bump, that Defendant Alex put him on strong antibiotics, and that that he now has a scar and a knot on his penis, but it has almost healed [*Id.*].

Plaintiff also sets forth allegations about showers not being cleaned properly, black mold in his cell, a shakedown due to drugs resulting in an inmate being tazed for looking out a door window, a conflict between inmate Eric Dalton and pod worker David Overholt during which inmate Dalton was tazed several times, and a denial of personal items due to a shakedown that lasted approximately a day as of the day the logbook was written [*Id.* at 5–7].

### III. Analysis

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "[s]ection 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere"). Plaintiff's § 1983 claims appear to center on his medical needs, the conditions of his confinement, a deprivation of property, and actions on other prisoners. The Court will address each of these issues in turn.

4

### A. Medical Needs

A prison authority's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Prison medical personnel or officials may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or by "interfer[ing] with treatment once prescribed." *Id.* at 104–05. Establishing a violation of the Eighth Amendment in the medical context requires evidence that that acts or omissions of an individual acting under the color of state law were "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition" is insufficient to support claim for deliberate indifference to serious medical needs under the Eighth Amendment, however, as "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 107. Accordingly, where a prisoner disputes the adequacy of the medical best care received, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

It is apparent from Plaintiff's complaint that, at most, he disputes the adequacy of the medical care that he was provided. Specifically, the complaint provides that (1) at lunchtime on July 8, 2016, Plaintiff told a guard that he needed medical treatment; (2) at four p.m. that same day, Plaintiff told the guard specific details regarding his need for medical care; (3) that guard spoke to the female nurse on duty about Plaintiff's need for medical treatment and she put Plaintiff on a list of inmates to be seen by the doctor on Monday because she was unable to treat male genital issues; (4) later that evening, after shift change, Plaintiff showed his medical issue to a different guard, and then obtained medical attention from a male jail nurse as quickly as the

male nurse could leave his father at the hospital; and (5) Plaintiff was thereafter treated with antibiotics until his infection resolved. As Plaintiff's allegations do not rise to the level of deliberate indifference, Plaintiff's complaint fails to state a claim for a violation of the Eighth Amendment arising out of the medical care that he was provided and this claim will be **DISMISSED**.

B. **Conditions of Confinement**

The Court now turns to Plaintiff's allegations regarding the conditions of his confinement and whether they may constitute an Eighth Amendment violation. "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman* 452 U.S. 337, 349 (1981). Only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment. *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992). An extreme deprivation is one "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original); *see also Rhodes*, 452 U.S. at 347.

To the extent Plaintiff intends to state a claim arising out of his allegations that the jail is non-compliant, neglected, and has high staff turnover, he has set forth no allegations from which the Court can plausibly infer that these conditions at the jail amounted to an extreme deprivation.

Further, while Plaintiff claims that the conditions of the jail caused him to contract MRSA, he does not specify what condition he believes caused the infection. Moreover, the specific conditions of the jail of which Plaintiff complains do not allow the Court to plausibly infer that Plaintiff was subjected to any condition that violated the Eighth Amendment.

6

First, Plaintiff has set forth no facts that allow the Court to plausibly infer that the clogged shower drains and towels that were not washed daily presented risks that society chooses not to tolerate. Further, "[s]ome exposure to black mold is a risk that society has chosen to tolerate." *McIntyre v. Phillips*, No. 1:07-CV-527, 2007 WL 2986470, at *3 (W.D. Mich. Sept. 10, 2007); *see Juliot v. Osborne*, No. 4:14CV-P1-M, 2014 WL 4259429, at *4 (W.D. Ky. Aug. 27, 2014) (finding that an "allegation of the presence of some mold does not create a condition intolerable for prison confinement" (citation and internal quotation marks omitted) (listing cases)). Moreover, even if the Court assumes without finding that black mold constitutes a grave deprivation intolerable in society, nothing in the complaint suggests that any Defendant knew of the black mold and/or knew that black mold could affect Plaintiff. Thus, Plaintiff has not set forth a plausible Eighth Amendment claim regarding the mold as to any Defendant. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (holding that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety").

Further, even if the Court assumes that the jail violated its own MRSA policy by not medically segregating Plaintiff and/or by taking away all but one jail uniform resulting Plaintiff and two other males being naked in a cell for two people while their laundry was washed,[2] Plaintiff has set forth nothing from which the Court can plausibly infer that this practice violated Plaintiff's constitutional rights by exposing him to an extreme deprivation or risk.

Accordingly, Plaintiff's complaint fails to state a claim for unconstitutional conditions of confinement and these claims will be **DISMISSED**.

---

[2] As Plaintiff states that the inmates were provided individual blankets with which to cover themselves, this allegation does not appear to implicate any privacy interest.

### C. Deprivation of Property

To the extent Plaintiff intended to state a claim for relief arising out of the deprivation of property resulting from the shakedown, this allegation also fails to state a claim for relief. Specifically, a plaintiff may not maintain an action under § 1983 for a deprivation of personal property, whether negligent, *Parratt v. Taylor*, 451 U.S. 527, 543–44 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330–31 (1986), or intentional, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984), where an adequate post-deprivation state remedy exists to address the claim and there is no allegation that the procedures are inadequate. *Parratt*, 451 U.S. at 543–44. The statutes governing the Tennessee Claims Commission, *see* Tenn. Code Ann. § 9-8-301 *et seq.*, provide Plaintiff with a state remedy for this claim. Plaintiff has not alleged that this state remedy is inadequate. Accordingly, this allegation regarding deprivation of property fails to state a claim upon which relief may be granted under § 1983 and it will be **DISMISSED**.

### D. Claims Asserted on Behalf of Other Prisoners

Lastly, to the extent Plaintiff intended to state claims on behalf of other prisoners, Plaintiff cannot assert the rights of other prisoners. *Newsom v. Norris*, 88 F.2d 371, 381 (6th Cir. 1989) (holding that a "a prisoner who initiates a civil action challenging certain conditions at a prison facility in his individual capacity is limited to asserting alleged violations of his own constitutional rights and . . . lacks standing to assert the constitutional rights of other prisoners"). Accordingly, all such claims fail to state a claim upon which relief may be granted under § 1983.

## III. Conclusion

For the reasons set forth above, Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 3] is **GRANTED**. However, even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983 and this action will

therefore be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A). As such, no process shall issue. As Plaintiff is not incarcerated, he will not be assessed the filing fee.

The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24. The Clerk will be **DIRECTED** to close this case.

**AN APPROPRIATE ORDER WILL ENTER.**

**E N T E R :**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE